NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1650                                        Appeals Court


AQUACULTURAL RESEARCH CORPORATION & another[1]  vs.  ROSEMARIE
AUSTIN & another.[2]


        Barnstable.     October 1, 2015. - November 9, 2015.

        Present:  Kafker, C.J., Katzmann, & Rubin, JJ.


Moot Question.  Practice, Civil, Moot case, Vacation of
     judgment.



     Civil action commenced in the Orleans Division of the
District Court Department on November 12, 2010.

     The case was heard by Brian R. Merrick, J.


     Matthew L. McGinnis for Old Kings Highway regional historic
district commission.
     Michele E. Randazzo for town of Dennis.
     Bruce P. Gilmore, for town of Yarmouth, amicus curiae,
submitted a brief.


     KAFKER, C.J.  The primary issue presented in this appeal is

the proper application of mootness principles.  In particular,

_____

     [1] Town of Dennis, intervener.

     [2] Old King's Highway regional historic district commission
(regional commission).

we first must decide whether a legal challenge to a permitting process for a wind turbine is mooted by a conservation restriction precluding the construction of the wind turbine. If so, we then must decide the status of the unreviewed town committee, regional commission, and court decisions. We conclude that the case is moot and vacate all of the unreviewed decisions.[3]

The procedural posture of the case is as follows. In 2010, Aquacultural Research Corporation (ARC) sought approval to construct a 242-foot-tall wind turbine on its property in the town of Dennis (town). Pursuant to the Old King's Highway Regional Historic District Act (Act),[4,5] ARC applied to the town's Old King's Highway regional historic district committee (town committee) for a certificate of appropriateness.[6] After

---

[3] We acknowledge the amicus brief submitted by the town of Yarmouth.

[4] St. 1973, c. 470, as amended through St. 2007, c. 220.

[5] The purpose of the Act is to "preserve and maintain [the Old King's Highway regional historic district (district)] as a contemporary landmark compatible with the historic, cultural[,] literary and aesthetic tradition of Barnstable county, as it existed in the early days of Cape Cod." St. 1973, c. 470, § 1, as amended by St. 1982, c. 338, § 1.

[6] The Act requires each member town of the district to appoint a town historic district committee responsible for issuing certificates of appropriateness for certain building and demolition projects. St. 1973, c. 470, §§ 5, 6, as amended by St. 1975, c. 845, §§ 5, 6. Specifically, the Act states, in part, "No building, structure, or part thereof, except as

the town committee issued the certificate, Rosemarie Austin, a town resident, appealed as an abutter[7] to the Old King's Highway regional historic district commission (regional commission), pursuant to § 11 of the Act.[8]  Austin claimed that the proposed wind turbine, which would be located approximately three-quarters of one mile from her property, would violate the Act and devalue her property.

Following a hearing, the regional commission found that the town committee "exercised poor judgment in approving the 600-kilowatt wind turbine at the proposed location."[9]  Based on this

---

hereinafter provided, shall be erected within the District unless and until an application for a certificate of appropriateness as to the exterior architectural features shall have been filed with the Committee.  Either a certificate of appropriateness or a certificate of exemption shall be issued by the Committee before erection."  St. 1973, c. 470, § 6, as amended by St. 1975, c. 845, § 5.

[7] The regional commission's petition for appeal requires an appellant to indicate the "relationship of the appellant to the subject of appeal."  In her petition, Austin claimed to be an abutter.

[8] "Any person aggrieved by the determination of the [town] committee . . . whether or not previously a party to the proceeding, may, within ten (10) days after filing of a notice of such determination with the town clerk, . . . appeal to the [regional] commission."  St. 1973, c. 470, § 11, as amended by St. 1975, c. 845, § 13.

[9] Upon timely notice of appeal, the regional commission must "hear all pertinent evidence and determine the facts, and if, upon the facts so determined, the [regional] commission finds that the [town] committee exceeded its authority or exercised poor judgment, was arbitrary, capricious, or erroneous in its actions, the [regional] commission shall annul the [town]

finding, the regional commission annulled the town committee decision and denied ARC's application for the certificate of appropriateness. ARC, and the town as intervener, then appealed to the Orleans Division of the District Court Department. Following a bench trial, a District Court judge revoked and reversed the decision of the regional commission and affirmed the decision of the town committee, finding that although Austin had standing to appeal as a "visual abutter,"[10] the regional commission had "exceeded its authority by annulling the decision of the" town committee. The regional commission and Austin next appealed to the Appellate Division of the District Court Department. After concluding that the trial judge erred in finding Austin had standing as a visual abutter, the Appellate Division vacated the judgment of the District Court and restored the town committee's approval of ARC's certificate.[11] The

---

committee determination" and either remand to the town committee or revise the determination. St. 1973, c. 470, § 11, as amended by St. 1975, c. 845, § 13.

[10] The judge noted that although Austin's property did not abut ARC's property, "the [Act] at its threshold is concerned with the visual appearance of things," and because the site of the proposed wind turbine "would be very visible from Austin's property" and would negatively impact her property, she was a "visual abutter."

[11] The Appellate Division decision states, "We have found no authority, anywhere, sanctioning the concept of one's status as a 'visual abutter' (or even using that term) so as to qualify him or her as a 'person aggrieved' under this Act or any similar statute, or to otherwise confer standing on a person."

regional commission and Austin timely filed notice of appeal from the Appellate Division decision and order in this court in October, 2014.[12]

On June 26, 2015, ARC granted a conservation restriction on its property to the town and others.[13]  The conservation restriction specifically prohibits the "[c]onstruction or placing . . . [of any] windmill, wind turbine, [or] wind generator" on ARC's property.[14]  Therefore, regardless of any certificate of appropriateness, no wind turbine may presently be built on the property at issue.

"Litigation ordinarily is considered moot when the party claiming to be aggrieved ceases to have a personal stake in its outcome."  Taylor v. Board of Appeals of Lexington, 451 Mass. 270, 274 (2008), quoting from Attorney Gen. v. Commissioner of Ins., 442 Mass 793, 810 (2004).  Because the certificate of appropriateness is now inoperative and of no present or future effect as a result of ARC's subsequent grant of the conservation

---

[12] Austin filed notices of joinder in the regional commission's opening and reply briefs.

[13] The Commissioners of the County of Barnstable, the town of Yarmouth, and the Dennis Conservation Trust.

[14] The conservation restriction was approved by the Secretary of the Executive Office of Energy and Environmental Affairs, pursuant to G. L. c. 184, § 32, and was recorded in the Barnstable County registry of deeds at book 28969, pages 78-112, on June 26, 2015.

restriction precluding the construction of the wind turbine, any action by this court purporting to affirm the certificate's issuance by the town committee or the certificate's later annulment by the regional commission would involve the "adjudication of [a] hypothetical dispute[]." Lockhart v. Attorney Gen., 390 Mass. 780, 782 (1984).  ARC no longer has any personal stake in the certificate of appropriateness for the wind turbine.  The same is true for Austin and the regional commission.  Therefore, the underlying litigation is moot.

Relying on Ott v. Boston Edison Co., the town argues that, even if the instant case is moot, this court should exercise its discretion and address the issues of visual abutter standing and the scope of review of local committee decisions under the Act. 413 Mass. 680, 683 (1992).  "We have on occasion exercised our discretion to answer questions in moot cases where certain conditions existed:  (1) the issue was fully argued on both sides; (2) the question was certain, or at least very likely, to arise again in similar factual circumstances; (3) where appellate review could not be obtained before the recurring question would again be moot; and (4) most importantly, the issue was of public importance." Ibid.  This is not, however, such an exceptional case.  The particular standing question before us is fact-specific and should not be decided in a theoretical case.  See Lockhart v. Attorney Gen., supra at 784.

Moreover, the more general issues of visual abutter standing and the scope of review of local committee decisions under the Act are not the type of evanescent, time-defined actions that will likely evade review in subsequent decisions. See, e.g., Roe v. Wade, 410 U.S. 113, 125 (1973) (pregnancy litigation will seldom survive time necessary for appellate review); Superintendent of Worcester State Hosp. v. Hagberg, 374 Mass. 271, 274 (1978) (commitment orders to mental health facilities are for limited duration and usually expire before appellate review); Doe v. Superintendent of Schs. of Worcester, 421 Mass. 117, 123 (1995) (suspended student is often readmitted before appeal of school discipline action can be heard). Accordingly, we decline to exercise our discretion to decide this moot case.

The next question we address is the status of the decisions left unreviewed because of the mootness determination. "[W]here a case becomes moot on appeal, we 'vacate the [judgment] appealed from with a notation that the decision is not on the merits, and remand the case to the [lower court] with directions to dismiss the [complaint].'" Building Commr. of Cambridge v. Building Code Appeals Bd., 34 Mass. App. Ct. 696, 700 (1993), quoting from Reilly v. School Comm. of Boston, 362 Mass. 689, 696 (1972). See United States v. Munsingwear, 340 U.S. 36, 39 (1950) ("The established practice of the Court in dealing with a civil case from a court in the federal system which has become

moot while on its way here . . . is to reverse or vacate the judgment below and remand with a direction to dismiss").[15]  We shall vacate the judgment below in part because parties that "may not obtain an appellate review of the decree on the merits [due to mootness] . . . should be free of collateral estoppel consequences of that decree if any issues of fact or law determined by the judge below should perchance reappear in future litigation between the parties."  Reilly v. School Comm. of Boston, supra.  See United States v. Munsingwear, supra at 40 (when underlying judgment is vacated, "the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary").[16]

_____

[15] A different analysis applies when the case is moot because it has been settled after the appeal was filed.  See U.S. Bancorp Mort. Corp. v. Bonner Mall Partnership, 513 U.S. 18 (1994).  "Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur."  Id. at 25.

[16] We also recognize that there is an "equitable tradition of vacatur."  U.S. Bancorp Mort. Corp. v. Bonner Mall Partnership, supra ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment").  This involves a consideration of the "nature and character of the conditions which have caused the case to become moot," including who is responsible for rendering the case moot and who has prevailed below.  Id. at 24.  For example different equitable considerations would apply to a vacatur action brought by a party that has lost below who unilaterally has taken action to render the case moot.  Id. at 25.  In the instant case, the prevailing parties below, the town and ARC, negotiated the conservation restriction responsible for

In the instant case there appears to be residual concern among the litigants about the status of the standing analyses in the unreviewed decisions.  Indeed, this concern, as well as argument regarding the scope of review under the Act more generally, seems to be the primary reason why the appeal has not been voluntarily dismissed.  Regardless, as we are vacating the judgment of the District Court and the decision and order of the Appellate Division both as moot, any and all potential collateral estoppel consequences of their standing analyses are thereby eliminated.  Their standing analyses cannot, therefore, be used as either a sword or a shield in any subsequent litigation between the parties.

Furthermore, in accordance with A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 329 (1961), we also shall order that the decisions of the town committee and the regional commission be vacated for the same reasons.  In A. L. Mechling Barge Lines, Inc., the United States Supreme Court held that the principles justifying vacatur of judgments of the United States District Courts due to mootness are "at least equally applicable to unreviewed administrative orders."  Ibid.  See Atlanta Gas Light Co. v. Federal Energy Regulatory Commn., 140 F.3d 1392, 1403 (11th Cir. 1998) ("In accord with Mechling and Munsingwear,

_____

rendering the case moot.  See ibid. (vacatur appropriate "when mootness results from unilateral action of the party who prevailed below").

we vacate the 1991 and 1992 [Federal Energy Regulatory Commission] Orders"); Tennessee Gas Pipeline Co. v. Federal Power Commn., 606 F.2d 1373, 1382 (D.C. Cir. 1979) ("We follow the course set out in Munsingwear and Mechling and, accordingly, vacate the order which we decline to review"); Hollister Ranch Owners' Assn. v. Federal Energy Regulatory Commn., 759 F.2d 898, 902 (D.C. Cir. 1985) (applying Munsingwear and Mechling in vacating unreviewed order of Federal Energy Regulatory Commission as moot); Radiofone, Inc. v. Federal Communications Commn., 759 F.2d 936, 938 (D.C. Cir. 1985) ("All members of the court are in agreement that this case is moot and that we must vacate the agency's order pursuant to [Munsingwear] and [Mechling]"); Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 951 (D.C. Cir. 2005) (vacating order of Librarian of Congress as moot).

The decision and order of the Appellate Division is vacated, not on the merits but because it is moot. We remand to the Appellate Division with direction that the District Court judgment must be vacated and a new judgment shall enter vacating the decisions of the town committee and regional commission as now moot.

So ordered.